**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

**December 13, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

In re: THEOPHILUS SHAWN
WILLIAMS,

     Debtor.

------------------------------

THEOPHILUS SHAWN WILLIAMS,

     Appellant,

v.

ADAM M. GOODMAN, Chapter 13
Trustee; EMESE WILLIAMS,

     Appellees.

_____

In re: THEOPHILUS SHAWN
WILLIAMS,

     Debtor.

------------------------------

EMESE WILLIAMS,

     Plaintiff - Appellee,

v.

THEOPHILUS SHAWN WILLIAMS,

     Defendant - Appellant.

No. 22-1067
(BAP No. 21-024-CO)
(Bankruptcy Appellate Panel)

No. 22-1068
(BAP No. 21-002-CO)
(Bankruptcy Appellate Panel)

_____

## ORDER AND JUDGMENT[*]

_____

Before **HOLMES**, Chief Judge, **HARTZ** and **ROSSMAN**, Circuit Judges.

_____

Theophilus Shawn Williams appeals a judgment of the Tenth Circuit Bankruptcy Appellate Panel (BAP) affirming the bankruptcy court's determination that his estranged wife, Emese Williams, held an equitable interest in their marital residence at the time he filed for bankruptcy. Mr. Williams also appeals a BAP judgment affirming the bankruptcy court's order authorizing the chapter 13 trustee to withhold distributions to Ms. Williams pending resolution of her claims against his bankruptcy estate. Exercising jurisdiction under 28 U.S.C. § 158(d)(1), we affirm the challenged judgments.

## I. Background

Theophilus and Emese Williams married in 2003. Mr. Williams bought a house in 2016 that the couple moved into with their children. The house was titled in Mr. Williams's name only. Ms. Williams filed for divorce later that same year.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In the divorce proceedings, the Williamses agreed to sell the house, and Ms. Williams recorded a notice of *lis pendens* in the applicable real property records. The divorce court later "order[ed] that [Ms. Williams] receive the first $24,800 of the proceeds from the sale of the marital residence, with the remaining sale proceeds to be divided equally between the parties." Aplt. App. at 68. But Mr. Williams "refused to sign a listing agreement" and filed a chapter 13 bankruptcy petition in 2018 without selling the house. *Id.* at 129.

Ms. Williams filed an adversary proceeding in the bankruptcy court seeking declarations that (1) her interest in the house did not become part of Mr. Williams's bankruptcy estate under 11 U.S.C. § 541(d), and (2) Mr. Williams's other debts to her were not dischargeable under 11 U.S.C. § 523(a)(2)(A). Mr. Williams responded with several counterclaims and a request for attorneys' fees under 11 U.S.C. § 523(d).

The bankruptcy court conducted a trial on these claims. By order entered January 8, 2021, it ruled in favor of Ms. Williams on her § 541(d) property-of-the-estate claim and against Ms. Williams on her § 523(a)(2)(A) non-dischargeability claim. It also rejected Mr. Williams's sole remaining counterclaim. But it did not address Mr. Williams's § 523(d) request for attorneys' fees. The bankruptcy court entered a final judgment that same day.

On January 22, 2021, Mr. Williams filed a motion under Federal Rules of Bankruptcy Procedure 7052 and 9023 alerting the bankruptcy court to its failure to rule on his request for attorneys' fees and seeking reconsideration. On the same day,

3

Mr. Williams filed a notice of appeal listing the "Order and Judgment on Plaintiff's claims under 541(d) and 523(a)" entered by the bankruptcy court on January 8, 2021, as "the judgment, order, or decree appealed from." Aplt. App. at 147.

The bankruptcy court denied Mr. Williams's motion for reconsideration on January 28, 2021. Its order expressly rejected Mr. Williams's request for attorneys' fees. Mr. Williams did not file a new or amended notice of appeal after the bankruptcy court ruled on his motion for reconsideration.

While the parties litigated the adversary proceeding, Mr. Williams's bankruptcy case progressed. Ms. Williams filed three general unsecured claims against Mr. Williams's bankruptcy estate, including one based on her right to proceeds from the sale of the house. Mr. Williams proposed a chapter 13 plan that placed general unsecured claims in "class four." The plan called for holders of class four claims to receive "a pro rata portion of all funds remaining after payment . . . of all prior classes." *Id.* at 83. And it stated that distributions would "only be made to [unsecured] creditors whose claims are allowed and are timely filed pursuant to Fed. R. Bankr. P. 3002 and 3004." *Id.* at 84. But the plan was silent on the allowance or disallowance of any particular class four claims. On June 25, 2020, the bankruptcy court entered an order confirming Mr. Williams's chapter 13 plan.

After the confirmation order entered, the chapter 13 trustee made all required distributions to senior creditors and began preparing to make distributions to class four unsecured creditors. By this time, the bankruptcy court had ruled on the adversary proceeding, and Mr. Williams's appeal of that ruling was pending before

4

the BAP. The pending appeal put the chapter 13 trustee "in a pickle" regarding distributions to Ms. Williams. *Id.* at 186. Ms. Williams would be entitled to a distribution from the bankruptcy estate based on her claim to proceeds from the sale of the house if she lost the appeal. But if she won the appeal, Ms. Williams would not be entitled to a bankruptcy distribution because the proceeds would be delivered to her outside the bankruptcy.

Faced with uncertainty about whether to make a distribution to Ms. Williams, "the chapter 13 trustee filed a motion with the bankruptcy court, asking for guidance. The bankruptcy court ordered the trustee to hold Ms. Williams's potential plan distributions in trust pending the outcome of the appeal in the adversary proceeding." *Id.* at 187. If Ms. Williams were to lose the appeal, the funds would be distributed to her as a fractional payment on her claim to a share of the house proceeds. But if she were to win, the funds held in trust would be distributed pro rata to Mr. Williams's other class four creditors, and Ms. Williams would receive her share of the house proceeds outside the bankruptcy. Mr. Williams appealed.

The BAP issued two opinions affirming the bankruptcy court's orders. In Mr. Williams's appeal of the bankruptcy court's rulings in the adversary proceeding, the BAP first held it could not consider the bankruptcy court's order deciding the reconsideration motion because Mr. Williams had not filed a notice appealing that order. On the merits, the BAP affirmed the bankruptcy court's conclusion that Ms. Williams had an equitable interest in the house, meaning her portion of the proceeds from the sale would not be property of Mr. Williams's bankruptcy estate. In Mr.

5

Williams's appeal of the bankruptcy court's distribution order, the BAP affirmed the bankruptcy court's "common-sense resolution of the distribution issue." *Id.*

Mr. Williams appeals both BAP decisions. We procedurally consolidated his two appeals.

## II. Standard of Review

"Although this is an appeal from a BAP decision, we review only the Bankruptcy Court's decision." *Rebein v. Cornerstone Creek Partners, LLC (In re Expert S. Tulsa, LLC)*, 842 F.3d 1293, 1296 (10th Cir. 2016) (citation and internal quotation marks omitted). "We treat the BAP as a subordinate appellate tribunal whose rulings may be persuasive but are not entitled to deference. Matters of law are reviewed de novo, and factual findings (which are made only by the bankruptcy court, not by the BAP) are reviewed for clear error." *Id.*

## III. Discussion

### A. Appeal No. 22-1067

In No. 22-1067, Mr. Williams appeals the bankruptcy court's distribution order. Mr. Williams argues the distribution order contravenes the bankruptcy court's earlier confirmation order and should therefore be set aside as a matter of law under the doctrines of res judicata and equitable mootness. In Mr. Williams's view, the confirmation order set the amount of each class four claim, including Claim No. 5, which Ms. Williams filed based on her alleged interest in the marital residence. From this premise, he argues the bankruptcy court erred by approving Ms. Williams's agreement to withdraw Claim No. 5 if she prevails in the appeal of the adversary

proceeding.  According to Mr. Williams, the chapter 13 trustee must make bankruptcy distributions to Ms. Williams based on Claim No. 5 even if she prevails on appeal and recovers the amount claimed outside the bankruptcy.  We are not persuaded.

Mr. Williams's argument is based on an erroneous reading of the chapter 13 plan and confirmation order.  The bankruptcy court correctly observed "there is no language in the Plan relating specifically to Claim No. 5 or the amount of Class Four unsecured claims . . . .  The Plan merely provides for the total amount to be paid to Class Four claims on a *pro rata* basis."  Aplt. App. at 165.  The plan also does not address the timing of class four distributions.  The confirmation order likewise does not address the allowance or disallowance of Claim No. 5 or the timing of class four distributions.  Because neither the confirmation order nor the plan it confirmed addressed Claim No. 5, the confirmation order did not have preclusive effect regarding the allowance of that claim or the timing of distributions based on that claim.  *Cf. Bullard v. Blue Hills Bank*, 575 U.S. 496, 502 (2015) ("Confirmation has preclusive effect, foreclosing relitigation of any issue actually litigated by the parties and any issue necessarily determined by the confirmation order." (internal quotation marks omitted)).  For this reason, Mr. Williams's invocation of the doctrine of equitable mootness on the grounds that the trustee's motion was "in the nature of an untimely appeal of the confirmation Order," Aplt. Br. at 30, is misplaced.[1]

---

[1] "Equitable mootness is a judicially-created doctrine of abstention that permits the dismissal of bankruptcy appeals where confirmed plans have been

## B.  Appeal No. 22-1068

In No. 22-1068, Mr. Williams appeals the bankruptcy court's rulings in the adversary proceeding.  As discussed, the BAP dismissed the portion of Mr. Williams's appeal challenging the bankruptcy court's denial of reconsideration because he failed to file a timely notice of appeal from the reconsideration order.  We begin by affirming that dismissal.

"[T]he failure to file a timely notice of appeal from a bankruptcy court's order constitutes a jurisdictional defect."  *Emann v. Latture (In re Latture)*, 605 F.3d 830, 832 (10th Cir. 2010).  As a general proposition, "[a] notice of appeal of a judgment or order is not effective with respect to judgments or orders entered after the challenged judgment or order."  *Abbasid, Inc. v. First Nat'l Bank of Santa Fe*, 666 F.3d 691, 697 (10th Cir. 2012).  In particular, under Bankruptcy Rule 8002, "[i]f a party intends to challenge an order disposing of" a Bankruptcy Rule 7052 or 9023 motion, "or the alteration or amendment of a judgment, order, or decree upon the motion—the party must file a notice of appeal or an amended notice of appeal."  Fed. R. Bankr. P. 8002(b)(3).  This court has construed substantially identical language in Federal Rule of Appellate Procedure 4(a)(4)(B)(ii) to require a new document designating the ruling on the reconsideration motion; a notice of appeal

---

substantially completed and reversal would prove inequitable or impracticable."
*Drivetrain, LLC v. Kozel (In re Abengoa Bioenergy Biomass of Kan., LLC)*, 958 F.3d
949, 955 (10th Cir. 2020).

filed *before* the court ruled on the reconsideration motion does not suffice. *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1009–10 (10th Cir. 2018).

Mr. Williams did not file a notice appealing the bankruptcy court's January 28, 2021 order resolving his motion for reconsideration, and we therefore affirm the BAP's dismissal of that portion of his appeal for lack of jurisdiction.

We next clarify the arguments that we do not consider on mootness and forfeiture grounds. Mr. Williams argues the bankruptcy court erred in the rulings on appeal in No. 22-1068 by failing to address his 11 U.S.C. § 523(d) request for attorneys' fees. We agree with the BAP that this argument "is moot because the Bankruptcy Court cured that error by denying the fee request in the Reconsideration Order, which Mr. Williams did not appeal." Aplt. App. at 176–77 n.20. We do not consider Mr. Williams's res judicata and equitable mootness arguments in No. 22-1068 because he did not advance those arguments in the BAP appeal leading to No. 22-1068. He therefore forfeited those arguments in No. 22-1068. *See Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1264 n.5 (10th Cir. 1999) (deeming an appeal point forfeited in part because the litigant failed to make the same argument when appealing from the bankruptcy court to the district court).[2]

---

[2] We entertain arguments for reversal forfeited in lower courts "only if the appellant can satisfy the elements of the plain error standard of review." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). "To show plain error, a party must establish the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1128. "If an appellant does not explain how its forfeited arguments survive the plain error standard, it effectively waives those arguments on appeal." *Rumsey Land Co. v. Res. Land Holdings, LLC (In re*

We now turn to Mr. Williams's challenge to the bankruptcy court's finding that Ms. Williams possessed an equitable interest in the house that did not become part of Mr. Williams's bankruptcy estate.  Under 11 U.S.C. § 541(a), "[t]he commencement of a [bankruptcy] case . . . creates an estate."  Subject to a few exceptions, the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  *Id.* § 541(a)(1).  Under one of the exceptions, "[p]roperty in which the debtor holds . . . only legal title and not an equitable interest, . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."  *Id.* § 541(d).

"For purposes of most bankruptcy proceedings, 'property interests are created and defined by state law.'"  *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002) (brackets omitted) (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)).  "Once that state law determination is made, however, we must still look to federal bankruptcy law to resolve the extent to which that interest is property of the estate."  *Walters v. Stevens, Littman, Biddison, Tharp & Weinberg, LLC (In re Wagenknecht)*, 971 F.3d 1209, 1213 (10th Cir. 2020) (internal quotation marks omitted).

---

*Rumsey Land Co.)*, 944 F.3d 1259, 1271 (10th Cir. 2019).  In connection with his res judicata and equitable mootness arguments, Mr. Williams asserts the bankruptcy court plainly erred in making a pair of findings in its distribution order.  But he does not "explain how [his] forfeited arguments survive the plain error standard," *id.*, so we deem them waived in No. 22-1068.

Under Colorado law, generally "all property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of coownership." Colo. Rev. Stat. Ann. § 14-10-113(3). But "[e]xcept for those rights which vest upon the filing of the divorce action, . . . a husband's property is free from any vested interest of the wife and, with a possible exception or two, he can sell it or give it away." *In re Questions Submitted by U.S. Dist. Ct.*, 517 P.2d 1331, 1334–35 (Colo. 1974). Yet "at the time of the filing of the dissolution action in which the division of property will be later determined, a vesting takes place." *Id.* at 1335. "Upon and after the filing of the action, the rights of the wife are analogous to those of a wife who can establish a resulting trust, irrespective of a divorce action, in the property of the husband." *Id.* Put differently, the wife has a "'species of common ownership' of the marital estate," that "resemble[s]" "co-owners[hip]." *Id.* at 1334.

Applying these principles, the bankruptcy court concluded that when Mr. Williams filed for bankruptcy, Ms. Williams had a vested interest in the house protected by "an encumbrance of record," created via "filing the *lis pendens*." Aplt. App. at 131. The bankruptcy court therefore determined Ms. Williams had "an equitable interest in the Property that [Mr. Williams] does not hold," that "is not property of the estate and is valued at 50% plus $24,800 of the equity therein." *Id.*

Mr. Williams contends the bankruptcy court erred because the divorce court did "not award[] [Ms. Williams] a ½ interest in the home." Aplt. Br. at 21. He

11

argues the divorce court instead merely ordered him to pay money to Ms. Williams as part of a "garden variety property settlement." *Id.* at 19.  While Ms. Williams possessed a right to payment based on the divorce court's order, Mr. Williams reasons, she did not have any form of ownership interest in the house.  This argument is unavailing.

Mr. Williams does not argue the house was excluded from the couple's marital property.  And he concedes that under Colorado law, "'upon the commencement of a dissolution proceeding, the wife has an interest in the marital property in the nature of a co-owner, rather than as a mere creditor of her husband.'"  *Id.* at 20 (quoting *In re Harms*, 7 B.R. 398, 399 (Bankr. D. Colo. 1980)).  That interest vests by operation of law without a need for a court to "award" it.  *See In re Questions*, 517 P.2d at 1334–35.  So Ms. Williams had a "'species of common ownership'" of the house "resembl[ing]" "co-owners[hip]" before the divorce court entered its division order. *Id.* at 1334.  We therefore agree with the bankruptcy court that when Mr. Williams filed for bankruptcy, Ms. Williams held an "equitable interest in [the house] that [Mr. Williams] [did] not hold."  11 U.S.C. § 541(d).

Mr. Williams next contends that, even if Ms. Williams had an equitable interest in the house, the bankruptcy court erred because that interest was not secured and perfected.  In support, he observes the divorce court did not impose a constructive trust, and he argues the *lis pendens* Ms. Williams filed did not effectively "record[] . . . a decreed interest in Mr. Williams['s] home."  Aplt. Br. at 21.  Again, we disagree with Mr. Williams.  § 541(d) does not require an equitable

12

interest held by a non-debtor to be secured and perfected to be excluded from the debtor's estate.[3] While a non-debtor's unsecured equitable interest might be subject to avoidance under 11 U.S.C. § 544(a), Mr. Williams does not argue Ms. Williams's interest in the house was or could be avoided under that section.[4] The only question before the court is therefore whether Ms. Williams's equitable interest in the house became property of Mr. Williams's bankruptcy estate under § 541(d), and, for the reasons discussed, we hold that it did not.

## IV. Conclusion

We affirm the BAP's judgment in No. 22-1067 and No. 22-1068.

Entered for the Court

Veronica S. Rossman
Circuit Judge

---

[3] As a result, we need not consider Mr. Williams's argument that the bankruptcy court erred by buttressing its § 541(d) analysis with an observation Mr. Williams "would have been unable to unilaterally dispose of the Property because of the outstanding *lis pendens*." Aplt. App. at 131.

[4] We therefore do not decide whether, or under what conditions, § 544(a) might operate to avoid a non-debtor's equitable interests in property.